## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| MARIO CERAME, | : | |
| | : | |
| *Plaintiff,* | : | |
| | : | |
| v. | : | Civil Action No. 3:21-cv-01508 (JCH) |
| | : | |
| EDWARD LAMONT, et al., | : | |
| | : | |
| *Defendants.* | : | |

### MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS

In this pre-enforcement challenge to Connecticut General Statutes § 53-37,[1] an ancient statute first enacted in 1917, the Plaintiff, Mario Cerame ("Plaintiff"), seeks prospective declaratory and injunctive relief against Connecticut Governor Edward Lamont (the "Governor" or "Governor Lamont") and Connecticut Chief State's Attorney Richard Colangelo (the "CSA" or "CSA Colangelo") (collectively, "Defendants") in their official capacities for the purpose of "permanently" enjoining enforcement of § 53-37, which Plaintiff alleges is facially unconstitutional under the First and Fourteenth Amendments. <u>Complaint, 11/10/2021, ECF No. 1</u> ("<u>Complaint</u>"), at ¶¶ 1–2, 10–11. For two reasons, the Court should dismiss this action for want of subject matter jurisdiction.

---

[1] "Any person who, by his advertisement, ridicules or holds up to contempt any person or class of persons, on account of the creed, religion, color, denomination, nationality or race of such person or class of persons, shall be guilty of a class D misdemeanor." CONN. GEN. STAT. § 53-37.

First, the Eleventh Amendment bars this suit. Plaintiff purports to avoid Eleventh Amendment immunity by invoking the doctrine of *Ex parte Young*. *Ex parte Young*, 209 U.S. 123 (1908). Defendants, however, are not proper parties for purpose of *Young* because they both lack the requisite connection to the enforcement of § 53-37 needed to invoke the *Young* doctrine.

Second, Plaintiff has not established standing under Article III. Plaintiff does not discretely allege beyond amorphous generalities the protected speech in which he wishes to engage, let alone how such indeterminate speech allegedly runs afoul of § 53-37. But even if he did, his purported injury is a farce. Despite alleging that through his past speech he has violated the ancient statute on a "weekly, if not daily, basis" without having once been subjected to actual or threatened enforcement of § 53-37, Plaintiff now suddenly "believes" that if he engages in the same speech that he previously engaged in without consequence on a "weekly, if not daily, basis," then he will be subject to prosecution under § 53-37. Complaint, ¶ 19. Plaintiff does not allege a single fact to support that belief, which is belied by Plaintiff's own allegations. Mindful that § 53-37 has not been substantively amended since it was first enacted in 1917, Plaintiff's purported fear of prosecution under § 53-37 is thus baffling, if not completely absurd. That is especially true given that there are virtually no published decisions applying § 53-37, and the few that do make clear that the statute would not apply to Plaintiff's alleged speech. Further, because this is a pre-enforcement facial challenge, Plaintiff's purported injury necessarily hinges not on any actual restriction

of his First Amendment rights but on a purported chill of his speech.  And yet Plaintiff expressly alleges that he has not been chilled by the provisions of § 53-37 and that he engages in the speech he desires on a "daily" and "weekly" basis.  There simply is no basis for this Court to intervene when Plaintiff continues to engage in his desired speech and has not been prosecuted for doing so.

For those reasons, which are more fully set forth herein, the Court should dismiss this action pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure.

## I.      STATEMENT OF FACTS & THE RELEVANT ALLEGATIONS

Connecticut General Statutes § 53-37, which is entitled "Ridicule on account of creed, religion, color, denomination, nationality or race," provides as follows:

> Any person who, by his advertisement, ridicules or holds up to contempt any person or class of persons, on account of the creed, religion, color, denomination, nationality or race of such person or class of persons, shall be guilty of a class D misdemeanor.

CONN. GEN. STAT. § 53-37.  The Connecticut General Assembly first enacted the statute in 1917 by public act entitled "An Act Concerning Discrimination in Places of Public Accommodation."  *See* Public Acts of the Connecticut General Assembly, 1917, Ch. 202, "An Act Concerning Discrimination in Places of Public Accommodation."  The act was initially codified at Connecticut General Statutes § 56-6135, a statute entitled "Class Discrimination" which provided as follows:

> Any person who, by his advertisement, ridicules or holds up to contempt any person or class of persons on account of the creed, religion, color, denomination, nationality or race of such person or class of persons, shall be fined not more than fifty dollars, or imprisoned not more than thirty days, or both.

CONN. GEN. STAT. § 56-6135 (rev. of 1918).

As is evident from the foregoing, the statute has not been substantively amended since its enactment over one century ago. According to Plaintiff, § 53-37 "continues to be enforced in all Judicial Districts in the State of Connecticut" and, "on information and belief," enforcement has "concerned interpersonal communications, not business advertisements." Complaint, ¶¶ 22–23.

Against that backdrop, Plaintiff alleges as follows in his Complaint. Plaintiff is a "First Amendment and free speech advocate" and a "licensed Connecticut Attorney." *Id.*, ¶ 12. Plaintiff "identifies" as both Italian and American. *Id.*, ¶ 13. He "sometimes ridicules or holds up to contempt" others and himself on the basis of "Italian heritage" or being "an American national." *Id.*

When among his "closest and dearest friends," Plaintiff "sometimes" ridicules others based on "race, religion, creed, color, nationality, or denomination" to "express comradery and as part of play." *Id.*, ¶ 14. "Sometimes" the foregoing "ridicule occurs in an open forum with others present or on the internet." *Id.* In Plaintiff's "personal life," he "speaks critically of Scientology and religious practices he views as harmful to society." *Id.*, ¶ 15. Plaintiff openly ridicules such religious positions to "rhetorical effect, as part of reduction *ad absurdum* or to otherwise make a point." *Id.* In the foregoing way, "he sometimes ridicules others or holds them up to contempt on the basis of religion or creed." *Id.* Plaintiff is a "frequent" advocate for free speech and association rights in his professional life and also "outside of the workplace." *Id.*, ¶

4

<u>16</u>.  He has presented "on speech rights" on panels, to local bar associations, and other trainings open to the public.  <u>Id.</u>  He "frequently" advises other attorneys on speech issues and has been quoted in Connecticut publications regarding his views of "speech issues in the news."  <u>Id.</u>

When advising others on speech rights, Plaintiff "sometimes" uses words "not uttered in polite company" such as "racial slurs" or "impolite terms for individuals of certain religious denominations."  <u>Id.</u>, ¶ 17.  Plaintiff "believes" others "could construe his advocacy, language, and forceful expressions" in these "situations" as "derogatory or demeaning, or as ridiculing others on the basis of race, color, denomination, or nationality."  <u>Id.</u>  Plaintiff enjoys "the work of a number of comedians" from different backgrounds.  <u>Id.</u>, ¶ 18.  "On occasion," he has "republished," either "in the form of video clips or orally or otherwise," and adopted as his own speech material created by such comedians that "sometimes includes material" that ridicules on the basis of "race, religion, creed, color, denomination, or nationality."  <u>Id.</u>, ¶ 18.

Plaintiff "believes" that through the foregoing speech, he violates § 53-37 "on a weekly, if not daily, basis."  <u>Id.</u>, ¶ 19.  He also "believes" that while "most prosecutors and police conduct themselves in good faith, he further believes such speech could subject him to enforcement of § 53-37 based on the arbitrary whims of a prosecutor or law enforcement officer."  <u>Id.</u>  "This concern" about § 53-37 "and enforcement chills Cerame in the speech he chooses to utter."  <u>Id.</u>, ¶ 20.

Plaintiff asserts that § 53-37 improperly punishes individuals for the content and viewpoint of their speech and that it is facially vague insofar as it depends on "an unascertainable standard," to wit, "ridicules or holds up to contempt." *Id.*, ¶¶ 24–26. Additional facts and allegations will be set forth where necessary.

## II.   LEGAL STANDARD

### A.   Rule 12(b)(1)

"A Rule 12(b)(1) motion challenging subject matter jurisdiction may be either facial or fact-based . . . .  When defendants bring a 'facial' challenge to standing—i.e., one based on the allegations in the complaint and exhibits attached to it—'we accept as true all material allegations of the complaint, and draw all reasonable inferences in favor of the plaintiff.'" *Carlone v. Lamont*, Docket No. 21-871, 2021 U.S. App. LEXIS 32440, at *3 (2d Cir. Nov. 1, 2021) (citations omitted).

## III.   LEGAL ANALYSIS

### A.   This Action is Barred by the Eleventh Amendment and Defendants are not proper parties for purposes of *Young*.

"The Eleventh Amendment bars suits against states and their officials unless the state consents to suit, Congress abrogates the state's immunity, or the case falls within the *Ex parte Young* exception." *NAACP v. Merrill*, 939 F.3d 470, 475 (2d Cir. 2019).  The *Young* exception "operates to end ongoing violations of federal law and vindicate the overriding federal interest in assuring the supremacy of the law . . . .  A plaintiff may invoke this exception provided that his complaint (a) alleges an ongoing violation of federal law and (b) seeks relief properly characterized as prospective." *Id.*

(citations and internal quotation marks omitted).  Plaintiff asserts a single count seeking prospective "declaratory and injunctive relief" against Governor Lamont and CSA Colangelo "solely" in their official capacities to prevent enforcement of § 53-37 and thereby end an alleged "ongoing violation of federal law."  Complaint, ¶¶ 10–11; 29–30.  It is thus manifest that he purports to invoke *Young*.  *See Ex parte Young*, 209 U.S. 123 (1908).  Neither Governor Lamont nor CSA Colangelo, however, are proper parties to this action for purposes of *Ex parte Young*.

"*Ex parte Young* held that a suit to enjoin as unconstitutional a state official's action was not barred by the [Eleventh] Amendment.  This holding was based on a determination that an unconstitutional state enactment is void and that any action by a state official that is purportedly authorized by that enactment cannot be taken in an official capacity since the state authorization for such action is a nullity." *Papasan v. Allain*, 478 U.S. 265, 276 (1986).  Accordingly, to fall within the exception the defendant state official "must have some connection with the enforcement of the act, or else it is merely making him a party as a representative of the state, and thereby attempting to make the state a party." *Ex parte Young*, 209 U.S. at 157.

To satisfy the "connection" requirement, the state official must have both "a particular duty to enforce the statute in question and a demonstrated willingness to exercise that duty" based on the conduct before the Court.  *Conn. Ass'n of Health Care Facilities, Inc. v. Rell*, No. 10-CV-136 (PCD), 2010 U.S. Dist. LEXIS 54649, at *15 (D. Conn. 2010).  Stated differently, the *Young* "exception only applies when the named

defendant state officials have some connection with the enforcement of the act and 'threaten and are about to commence proceedings' to enforce the unconstitutional act." *Okpalobi*, 244 F.3d at 416. When that willingness to enforce is not present, it cannot be said that the official is "involved in an ongoing violation of federal law." *Goodspeed Airport, LLC v. East Haddam Inland Wetlands & Watercourses Comm'n*, 632 F. Supp. 2d 185, 188 (D. Conn. 2009). A plaintiff's failure to name a proper defendant that meets the connection requirement is "fatal" to a plaintiff's claim. *HealthNow N.Y., Inc. v. New York*, 739 F. Supp. 2d 286, 295 (W.D.N.Y. 2010).

1.   Governor Lamont is not a proper party under *Young*.

That Governor Lamont is not a proper party to this action under *Young* is a proposition so manifest that it warrants little discussion. Plaintiff does not allege that Governor Lamont has any connection to the enforcement of § 53-37, let alone a particular duty or demonstrated willingness to enforce the same. The plain language of § 53-37 reveals no such connection and Connecticut law is otherwise devoid of provisions whereby the Governor is charged with enforcement of criminal statutes through arrest, prosecution, or otherwise.

Plaintiff alleges that the Governor is Connecticut's chief executive officer "charged with executing and enforcing the laws of the State of Connecticut." Complaint, ¶¶ 10, 29. Granted. The Governor's general constitutional duty to "take care that the laws be faithfully executed," however, cannot serve to invoke *Young*. CONN. CONST. ART. IV., § 12. "[C]ourts in the Second Circuit have not extended the

exception under *Ex parte Young* on the basis that a state official has a general duty to execute and enforce state laws." *Kuck v. Danaher*, 822 F. Supp. 2d 109, 142 (D. Conn. 2011); *Rell*, 2010 U.S. Dist. LEXIS 54649, at *15–*16; *Klinger v. Connecticut*, Docket No. 3:04-CV-1081 (MRK), 2004 U.S. Dist. LEXIS 24093, at *6-8 (D. Conn. Nov. 12, 2004). To the contrary, the "general authority to enforce the laws of the state is not sufficient to name a state officer as a defendant in an action challenging a law." *HealthNow New York, Inc.*, 739 F. Supp. 2d at 294 (internal quotation marks omitted). "Finding otherwise would allow the [*Young*] exception to become the rule and abrogate state immunity." *Rell*, 2010 U.S. Dist. LEXIS 54649, at *16.

Governor Lamont's general constitutional duty to execute state law is not sufficient to make him a proper party to this suit for purpose of *Young*. Connecticut law is devoid of any indication that the Governor is responsible for enforcing criminal statutes or determining what criminal statutes should be enforced. It is manifest that he is named as a token "representative of the state" lacking any connection to the enforcement of § 53-37. *Ex parte Young*, 209 U.S. at 157. Because Plaintiff's Complaint is devoid of allegations satisfying the connection requirement of *Young* with respect to the Governor, this action against Governor Lamont in his official capacity is barred by the Eleventh Amendment. It should be dismissed accordingly.

2.      CSA Colangelo is not a proper party under *Young*.

Contrary to the allegations of the Complaint, the Connecticut Constitution does not charge CSA Colangelo with duties of "investigation and prosecution of all

criminal matters within the State of Connecticut."[2]   Complaint, ¶ 11 (citing Article XXIII of the Connecticut Constitution, which amended Article IV by adding § 27 thereto).   Although the Connecticut Constitution vests the CSA with "the prosecutorial power of the state," the CSA is not a proper party to this action under *Young* because Connecticut law does not impose upon him any special duty to investigate criminal matters or initiate criminal prosecutions in the first instance for violations of the criminal law at large, let alone a violation of § 53-37.   *See* CONN. CONST. ART. IV., § 27.   Stated differently, the CSA is not under a special duty to enforce Connecticut's criminal law, including § 53-37, in the first instance.   Because § 53-37 does not provide that it is to be enforced by the CSA, and because Connecticut law does not elsewhere imply any "special relation" between the CSA and the enforcement of § 53-37, the CSA lacks the required enforcement "connection" to § 53-37 needed for Plaintiff to invoke *Young* against him.   *Ex parte Young*, 209 U.S. at 158–59.

The Connecticut Constitution vests both the CSA and the individual state's attorneys for each judicial district, all of whom are independent constitutional officers, with coequal "prosecutorial power of the state."   CONN. CONST. ART. IV., § 27. Connecticut law imposes a special duty upon the individual state's attorneys for each

---

[2]By the plain language of the Connecticut Constitution, the duties that Plaintiff ascribes to the CSA are, in actuality, charged to the Division of Criminal Justice: "[t]here shall be established within the executive department a division of criminal justice *which shall be in charge of the investigation and prosecution of all criminal matters*."   CONN. CONST. ART. IV. § 27.

judicial district that, significantly, is *not* imposed on the CSA, to wit, the duty of enforcing Connecticut's criminal law in the first instance: "Each state's attorney, assistant state's attorney and deputy assistant state's attorney shall diligently inquire after and make appropriate presentment and complaint to the Superior Court of all crimes and other criminal matters within the jurisdiction of the court or in which the court may proceed, whether committed before or after his appointment to office." CONN. GEN. STAT. § 51-286a(a); *see, e.g.*, CONN. GEN. STAT. § 51-278(b)(1)(B) (providing that each state's attorney appointed for each judicial district "shall act therein as attorney on behalf of the state"); *see also Inkel v. Connecticut*, Docket No. 3:14-CV-01303 (MPS), 2015 U.S. Dist. LEXIS 86092, at *13 (D. Conn. July 2, 2015) (observing that CSA "is not responsible for prosecuting individual cases within the various judicial districts" but that such responsibility belongs to "the local State's Attorney for each judicial district"); *Elliott v. City of Hartford*, Docket No. 3:09-CV-00948 (AWT), 2013 U.S. Dist. LEXIS 204324, at *5-6 (D. Conn. Sep. 30, 2013) ("[e]ach of the thirteen judicial districts in Connecticut is led by a state's attorney, who is appointed by the Criminal Justice Commission").

The Second Circuit has recognized that the CSA occupies a "somewhat peculiar position" as the "administrative head" of the Connecticut Division of Criminal Justice. CONN. CONST. ART. IV., § 27; *Powers v. Coe*, 728 F.2d 97, 99 n.3 (2d Cir. 1984) (observing that under previous statutory scheme CSA exercised powers in criminal matters "similar in some respects to those of the attorney general in many states").

Connecticut law obliges the CSA to carry out administrative duties and to represent the state in "appellate, post-trial, and postconviction proceedings," but it plainly does not impose any duty upon the CSA to enforce Connecticut's criminal law in the first instance. CONN. GEN. STAT. § 51-277(c); *see* CONN. GEN. STAT. § 51-278(a) (providing that CSA is the "administrative head" of the Division of Criminal Justice); CONN. GEN. STAT. § 51-279 (describing the powers and duties of the office of the CSA);

*see also* https://portal.ct.gov/DCJ/About-Us/About-Us/Office-of-the-Chief-States-Attorney (last visited 2/9/2022); https://portal.ct.gov/DCJ/About-Us/About-Us/Frequently-Asked-Questions (last visited 2/9/2022).

Connecticut law recognizes that the CSA has residual prosecutorial powers, to wit, he "*may* sign any warrants, informations, applications for grand jury investigations and applications for extradition," but Connecticut law does not require him to exercise those powers as it does the individual state's attorneys. CONN. GEN. STAT. § 51-277(d)(1) (emphasis added). Beyond the foregoing, the CSA does not have the ability to take additional steps in pursuit of a criminal prosecution for violation of § 53-37 in the first instance without the "prior consent" of the individual state's attorney concerned. CONN. GEN. STAT. § 51-277(d)(2). Stated another way, § 53-37 is enforced, if at all, by parties other than the CSA, namely the individual state's attorneys, all of whom have the power, ability, and special duty to enforce the criminal law in the first instance. CONN. GEN. STAT. § 51-286a(a).

"For a duty found in the general laws to constitute a sufficient connection, it must include the right *and the power* to enforce . . . the act in question." *HealthNow New York, Inc.*, 739 F. Supp. 2d at 296 n.6 (emphasis in original) (quoting *Okpalobi v. Foster*, 244 F.3d 405, 416-17 (5th Cir. 2001)). "Thus, any probe into the existence of a *Young* exception should gauge (1) the ability of the official to enforce the statute at issue under his statutory or constitutional powers, and (2) the demonstrated willingness of the official to enforce the statute." *Okpalobi*, 244 F.3d at 417; *see Ex parte Young*, 209 U.S. at 160 (positing the relevant question as "whether the attorney general had, *by the law of the state*, so far as concerns the . . . acts [at issue], any duty with regard to the enforcement of the same") (emphasis added).

The CSA does not have an ability to enforce § 53-37 under Connecticut law, which plainly imposes the primary responsibility for investigating and prosecuting crimes, including violations of § 53-37, upon the individual state's attorneys. *See, e.g.*, CONN. GEN. STAT. § 51-277(a). Plaintiff has not alleged that the CSA has demonstrated any "willingness" to enforce § 53-37. In fact, Plaintiff basically admits that the statute is not enforced by the CSA but the individual state's attorneys for each judicial district. *See* Complaint, ¶ 28 ("the statute is enforced under color of law, by police and *state's attorneys*, working independently and in combination with one another") (emphasis added). At bottom, the CSA lacks the requisite connection to the enforcement of § 53-37 needed to invoke *Young*. CSA Colangelo is not a proper party

under *Young* and this action against him in his official capacity is barred by the Eleventh Amendment.  It should be dismissed accordingly.

**B.    Plaintiff lacks standing to maintain this pre-enforcement challenge to Connecticut General Statutes § 53-37.**

The jurisdiction of a federal court is limited to actual cases and controversies. U.S. CONST. art. III, § 2, cl. 1.  "Standing to sue is a doctrine rooted in the traditional understanding of a case or controversy." *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016).  "The law of Article III standing, which is built on separation-of-powers principles, serves to prevent the judicial process from being used to usurp the powers of the political branches." *Susan B. Anthony List v. Driehaus* ("*SBA List*"), 573 U.S. 149, 157 (2014) (quoting *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 408, 133 S. Ct. 1138, 185 L. Ed. 2d 264 (2013)).  "In keeping with the purpose of this doctrine," the courts' "standing inquiry has been especially rigorous when reaching the merits of the dispute would force [it] to decide whether an action taken by" a state legislature or executive was unconstitutional.  *Clapper*, 568 U.S. at 408; *see Griswold v. Connecticut*, 381 U.S. 479, 481 (1965).

"The 'irreducible constitutional minimum' of standing consists of three elements . . . [1] an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo*, 136 S. Ct. at 1547 (citations omitted).  "The presence of a disagreement, however sharp and acrimonious it may be, is insufficient by itself to meet these

requirements." *Kearns v. Cuomo*, 981 F.3d 200, 207 (2d Cir. 2020) (quoting *Hollingsworth v. Perry*, 570 U.S. 693, 704, 133 S. Ct. 2652, 186 L. Ed. 2d 768 (2013)).

Plaintiff fails to satisfy the injury-in-fact requirement. "To establish injury in fact, a plaintiff must show that he or she suffered 'an invasion of a legally protected interest' that is 'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical.'" *Id.*, at 1548 (quoting *Lujan v. Defenders of Wildlife*, 504 U. S. 555, at 560, 112 S. Ct. 2130, 119 L. Ed. 2d 351). To establish an injury-in-fact in the pre-enforcement context, a plaintiff must allege that he or she intends to engage in specific conduct proscribed by the statute and that there is a sufficiently imminent risk of enforcement to justify federal court intervention. *Knife Rights, Inc. v. Vance*, 802 F.3d 377, 384 (2d Cir. 2015). Although the imminence requirement may be "a somewhat elastic concept," the Supreme Court has made clear that "it cannot be stretched beyond its purpose . . . to ensure that the alleged injury is not too speculative for Article III purposes—that the injury is ***certainly*** impending." *Id.* (emphasis in original) (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 565 n.2 (1992)).

Thus, even in the First Amendment context, "[a] party facing prospective injury has standing to sue [only] where the threatened injury is real, immediate, and direct." *Davis v. Fed. Election Comm'n*, 554 U.S. 724, 734 (2008). "[A]llegations of *possible* future injury are not sufficient." *Clapper*, 133 S. Ct. at 1147. (emphasis in original; quotation marks omitted). Nor is an "objectively reasonable" fear of harm.

15

*Id.* at 1147-50 and n.5.  Rather, standing is established "only 'if the threatened injury is certainly impending, or there is a substantial risk that the harm will occur.'" *McMorris v. Carlos Lopez & Assocs., LLC*, 995 F.3d 295, 300 (2d Cir. 2021) (quoting *SBA List*, 573 U.S. 149, 158 (2014)).

In assessing whether future enforcement of a statute is sufficiently imminent to satisfy this requirement, particular "weight must be given to the lack of a history of enforcement of the challenged statute to like facts, that no enforcement has been threatened as to plaintiffs' proposed activities . . . [and that] the Government [has] disavow[ed] any intention to prosecute on the basis of the Government's own interpretation of the statute and its rejection of plaintiffs' interpretation . . . ." *Blum v. Holder*, 744 F.3d 790, 798 (1st Cir. 2014); *see Knife Rights, Inc.*, 802 F.3d at 384. The imminence requirement generally is not met when future enforcement depends on hypothetical events that may never occur.  *Clapper*, 568 U.S. at 410.  That is especially true where, as here, the occurrence of those events depends on the actions of independent third parties not before the Court, as the Supreme Court repeatedly has reiterated its longstanding "reluctan[ce] to endorse standing theories that require guesswork as to how independent decisionmakers will exercise their judgment."  *Id.*, at 412–13.

Here, Plaintiff purports to mount a pre-enforcement challenge to § 53-37.  In other words, he is not a defendant in a pending criminal case for violation of § 53-37.  Indeed, he does not allege having ever been threatened with enforcement.  Plaintiff

fails to establish standing because he does not discretely allege beyond generalities the protected speech in which he wishes to engage, let alone how such indeterminate speech allegedly runs afoul of § 53-37.  Even if Plaintiff had made that threshold showing, which he does not, Plaintiff has not demonstrated a sufficiently imminent and likely threat of enforcement based on constitutionally protected speech.

> 1. <u>Plaintiff does not allege specific or sufficient facts to identify the speech he intends to engage in that is "arguably" protected by the First Amendment, let alone whether any such speech is "arguably" proscribed by Connecticut General Statutes § 53-37.</u>

It is Plaintiff's burden to point to "specific facts" identifying the speech he intends to engage in that is arguably prohibited by § 53-37.  *Clapper*, 568 U.S. at 412 n.4.  "[A] plaintiff cannot rely solely on conclusory allegations of injury or ask the court to draw unwarranted inferences in order to find standing."  *Baur v. Veneman*, 352 F.3d 625, 636-37 (2d Cir. 2003).

The Complaint is devoid of allegations describing in some discrete way the conduct that Plaintiff has engaged in or intends to engage in.  The six paragraphs Plaintiff employs to identify his past conduct, all of which also purport to describe his intended future conduct, amount to generalized and ambiguous summaries that, while couched in the watchwords of § 53-37, lack particularity and specificity sufficient to discern the speech in which he has engaged.  <u>Complaint, ¶¶ 13–18</u>. Plaintiff, for example, asserts that he "ridicules" or holds others "up to contempt" based on "Italian heritage," "being an American National," and/or "race, religion, creed, color, nationality, or denomination."  <u>*Id.*</u>, ¶¶ 13–14.  He also asserts that he

17

"speaks critically" of "Scientology and religious practices" he views as harmful to society, that he "openly ridicules such religious positions," and, therefore, "sometimes ridicules others or holds them up to contempt on the basis of religion or creed." *Id.*, ¶ 15. "Sometimes" he "uses words that are not uttered in polite company, such as racial slurs or impolite terms for individual of certain religious denominations." *Id.*, ¶ 17. Plaintiff also asserts that he has "republished" and thereby adopted as his own speech comedic material that "ridicules on the basis of race, religion, creed, color, denomination, or nationality." *Id.*, ¶ 18.

The foregoing allegations are insufficient to survive a motion to dismiss because they purport to identify what Plaintiff intends to say at some indefinite point in the future based solely on what he has said in the past without first setting forth facts sufficient to discern Plaintiff's past statements.    Stated another way, his Complaint does not set forth concrete or "specific statements" that are arguably affected with a constitutional interest. *See SBA List*, 573 U.S. at 161 (observing that plaintiffs had "pleaded *specific statements* they intend to make in future election cycles") (emphasis added); *Natl. Org. for Marriage, Inc. v. Walsh*, 714 F.3d 682, 690 (2d Cir. 2013) (observing that plaintiff attached to its complaint "an example of a radio advertisement that" plaintiff wanted to broadcast in New York and setting forth the content thereof); *see also United Public Workers v. Mitchell*, 330 U.S. 75, 90 (1947) (holding that certain appellants lack standing in part because "[w]e can only speculate as to the kinds of political activity the appellants desire to engage in or as

to the contents of their proposed public statements or the circumstances of their publication").

Plaintiff also fails to establish that his indeterminate past conduct, and therefore his intended future conduct, "arguably" is proscribed by § 53-37. *SBA List*, 573 U.S. at 161–62. This is so because the "statute prohibits the ridiculing or holding up to contempt of a person or class *only when such acts are accomplished by means of 'advertisement.'"   National Socialist White People's Party & Fred Sherwood v. Southern New England Telephone Company, et al.*, Civil No. H-74-230 (D. Conn. Sept. 30, 1975) (per curiam) (three-judge court) (emphasis added).[3]   In *Sherwood*, the three-judge court adopted a Connecticut trial court's interpretation of "advertisement" in § 53-37 to mean "a public notice, usually paid for, as of things for sale, needs, etc. which relates to a paid article to bring the public's attention to something for the purpose of

---

[3]*Sherwood* is an unreported *per curiam* opinion of a three-judge court in this District. Pursuant to 28 U.S.C. § 1253, the *Sherwood* plaintiffs subsequently appealed the decision of the three-judge court directly to the Supreme Court of the United States. A copy of the underlying *Sherwood* opinion appears in "Appendix A" of the appellate petition filed in support of said direct appeal.  The appellate petition is available via the following WestLaw citation:  1976 WL 194720.  The underlying decision itself, however, is not independently available on either WestLaw or LexisNexis, and Defendants were unable to find it via the public online database for the National Archives.  As such, Defendants have requested a copy of the case file for *Sherwood*, Civil No. H-74-230, from the Boston/Waltham Federal Records Center.  Because Defendants are unlikely to receive the case file before the deadline for filing this Motion, the undersigned conferred with Plaintiff, provided a copy of the *Sherwood* appellate petition at 1976 WL 194720, and explained Defendants' intent to rely on the decision appearing at Appendix A therein.  Defendants will supplement the record upon receipt of *Sherwood* case file from the Federal Records Center.  Until then, a copy of the decision as retrieved from the appellate petition available from WestLaw is appended at <u>Exhibit 1</u>.

promoting the sale of the subject matter in question."[4]  *Id.* (citing *State of Connecticut v. Jensen*, (14th Cir. Ct. Hartford, June 9, 1969, *Santaniello, J.*)).[5]  Significantly, neither the Connecticut Supreme Court nor the Connecticut Appellate Court has interpreted the meaning of "advertisement" in § 53-37 since *Sherwood*.

None of Plaintiff's alleged conduct "arguably" amounts to his engaging in "ridicule" or holding others "up to contempt" by way of any "advertisement" as the latter term is employed in § 53-37.  Much of Plaintiff's alleged conduct does not involve a "public notice" of any kind and, even for any conduct that "arguably" may involve some "public notice," such notice does not "arguably" relate to "things for sale" or the bringing "the public's attention to something for the purpose of promoting the sale of the subject matter in question."  Plaintiff's alleged conduct is not "arguably" prohibited by § 53-37 because the statute does not proscribe conduct made in the absence of an "advertisement."  Accordingly, Plaintiff has failed to establish an injury-in-fact required for Article III standing.

---

[4]In *Sherwood*, the Court observed that, as of the date of that opinion, the Connecticut Supreme Court had not interpreted the meaning of "advertisement" in § 53-37 and, for that reason, relied upon *State v. Jensen*.  As of the date of this Motion, neither the Connecticut Supreme Court nor the Connecticut Appellate Court has interpreted the meaning of "advertisement" in § 53-37.

[5]*State of Connecticut v. Jensen* is an unreported decision from the long-defunct Connecticut Circuit Court.

<u>2.      Even if Plaintiff demonstrates an intention to engage in speech "arguably" protected by the First Amendment that also is "arguably" proscribed by Connecticut General Statutes § 53-37, he fails to establish a credible threat of prosecution</u>.

Plaintiff alleges that he openly engaged in a litany of conduct that he believed was violative of § 53-37 "on a weekly, if not daily, basis" in the past without consequence.  <u>Complaint, ¶¶ 13–19</u>.  He now allegedly fears enforcement of the ancient statute on account of his intent to engage in precisely the same conduct that he previously engaged in without consequence "on a weekly, if not daily, basis." <u>Id.</u>, ¶ 19.  "This concern," the provenance or cause of which is not apparent from any allegation in the Complaint, allegedly "chills" Plaintiff "in the speech he chooses to utter." <u>Id.</u>, ¶ 20.  Any "concern" that § 53-37 will be enforced against Plaintiff is manifestly "imaginary and wholly speculative," if not completely absurd. *Hedges*, 724 F.3d at 196.  And Plaintiff's purported "chill" is entirely self-inflicted. *Dean v. Town of Hempstead*, 527 F. Supp. 3d 347, 403 (E.D.N.Y. 2021) ("a plaintiff may not establish injury for standing purposes based on a 'self-inflicted' injury").  He cannot "manufacture standing" through self-chilling "based on . . . fears of [that] hypothetical future harm that is not certainly impending." *Clapper*, 568 U.S. at 416.

Plaintiff does not allege that § 53-37 has ever been enforced against him for any reason.  Specifically, he does not allege that he has been prosecuted or threatened with prosecution under § 53-37 for previously engaging in the conduct described in Paragraphs 13 through 18 of his Complaint, which distinguishes this case from *SBA List* and its progeny finding standing based on a history of past enforcement.  *SBA*

*List*, 573 U.S. at 164 ("[m]ost obviously, there is a history of past enforcement here"). Nor does Plaintiff allege that others have been prosecuted or threatened with prosecution under § 53-37 for having engaged in the conduct or conduct comparable to that he describes in Paragraphs 13 through 18 of his Complaint. When considering the foregoing in conjunction with Plaintiff's allegations that his past conduct amounted to "weekly" and/or "daily" violations of § 53-37, the notion that Plaintiff is likely to be prosecuted for engaging in the same conduct in the future is, at best, incredible.

Indeed, apart from *State of Connecticut v. Jensen*, (14th Cir. Ct. Hartford, June 9, 1969, *Santaniello, J.*),[6] Connecticut law is devoid of judicial opinions addressing or applying § 53-37 in any circumstance, let alone in connection with conduct comparable to that Plaintiff has engaged in and continues to engage in. The Complaint, as noted, is devoid of allegations asserting that the type of conduct that Plaintiff has engaged in and intends to engage in, or conduct comparable thereto, has been the subject of prior enforcement actions. As alleged, Plaintiff's fear of prosecution is illusory, unfounded, and not credible. "Both the injury based on threat of prosecution and the injury based on self-censorship depend on the existence of a *credible threat* that the challenged law will be enforced." *Mangual v. Rotger-Sabat*, 317 F.3d 45, 57 (1st Cir. 2003) (emphasis added). "[A] plaintiff claiming standing

---

[6]See *supra*, note 5.

22

must show that the likelihood of future enforcement is substantial." *California v. Texas*, 141 S. Ct. 2104, 2114 (2021).  This Plaintiff fails to do.

Plaintiff, rather, alleges that his sudden and newfound fear of prosecution under § 53-37 is borne of his belief that the "speech [described in Paragraphs 13 through 18] could subject him to enforcement of the statute based on the arbitrary whims of a prosecutor or law enforcement officer." Complaint, ¶ 19.  But if Plaintiff's allegations are to be believed, which they must in this posture, then a "prosecutor or law enforcement officer" could have previously enforced the statute against him on an "arbitrary whim" for any one of his past "daily" or "weekly" violations thereof.  No such past enforcement or threatened enforcement is alleged by Plaintiff despite § 53-37 having been on the books for 105 years without having been substantively amended.   And if there is "someone" or "something" that prevented such past enforcement, Plaintiff does not allege who or what prevented such enforcement.  The Complaint begs truly begs the question—if there is "someone" or "something" that altered the *status quo ante* in such a way that there is now a credible threat of impending prosecution under § 53-37 for engaging in conduct that Plaintiff freely engaged previously on a "weekly" or "daily" basis without consequence, that "someone" or "something," including any catalyst for Plaintiff's inexplicable paradigm shift, is not identified in the Complaint.

As alleged, Plaintiff's belief that § 53-37 will be enforced against him under the circumstances of this case is imaginary, implausible, and ultimately insufficient to

establish a credible threat of prosecution.  The absence of *any* allegations describing *any* reason why Plaintiff now suddenly fears prosecution under a 105-year-old statute for conduct that he previously engaged in on a "daily" or "weekly" without consequence, and thus without any previous fear of prosecution, renders the "likelihood of future enforcement" highly unlikely. *California v. Texas*, 141 S. Ct. at 2114. *Clapper* clarified that a plaintiff carries the burden of "pleading and proving *concrete facts*" demonstrating that a defendant's "actual action *has caused* the substantial risk of harm" and may not rely on "speculation" or an "attenuated chain of inferences" to do so.  *Clapper*, 568 U.S. at 412–13 & 414 n.5 (emphasis added). Plaintiff does not allege that any actions of Defendants have caused a credible threat of prosecution, a substantial risk of harm, or any other injury that is *impending*.  He therefore fails to carry his burden.

To be sure, and mindful that this is a pre-enforcement facial challenge to § 53-37 in which Plaintiff's purported injury necessarily hinges not on the actual restriction of his First Amendment rights but on a purported chill of his speech, Plaintiff does not allege that § 53-37 has actually chilled his speech.  To the contrary, he alleges that he engaged in the speech described in his Complaint on a "daily" and "weekly" basis and that he intends to "engage in such activity in the future as well." Complaint, ¶¶ 13–18.  The Complaint, however, is devoid of allegations that Plaintiff has self-censored or otherwise been chilled, or that he will be chilled in the future.  It is Plaintiff's burden to allege facts establishing the foregoing.  "Where a party can

show no change in his behavior, he has quite plainly shown no chilling of his First Amendment right to free speech." *Curley v. Village of Suffern*, 268 F.3d 65, 73 (2d Cir. 2001).   Plaintiff offers nothing beyond a bare assertion that his implausible "concern" about "the statute and enforcement chills [Plaintiff] in the speech he chooses to utter." Complaint, ¶ 20.   Plaintiff, after all, alleges that he continues to engage in his desired speech and has not been prosecuted for doing so.   The "naked assertion of a chill" cannot suffice on these allegations.   *Spear v. West Hartford*, 954 F.2d 63, 67 (2d Cir. 1992); *see Vista-Graphics, Inc. v. Virginia DOT*, 171 F. Sup. 3d 457, 469 (E.D. Va. 2016) ("[i]n the face of this complete inaction by the State, Plaintiffs' self-censorship, even if true, is unreasonable").

At bottom, even under the "somewhat relaxed standing and ripeness rules" applicable to pre-enforcement First Amendment claims in this Circuit, Plaintiff has not demonstrated a sufficiently imminent and likely threat of enforcement based on any constitutionally protected speech.   *Walsh*, 714 F.3d at 689.   He thus fails to establish an injury-in-fact for purposes of Article III standing.

## IV.   CONCLUSION AND RELIEF REQUESTED

"Whatever constitutional infirmities the statute may contain, this case is not at present an appropriate vehicle for their delineation." *Nat'l Socialist White People's Party & Fred Sherwood v. Southern New England Telephone Company, et al.*, Civil No. H-74-230 (D. Conn. 1975) (per curiam) (three-judge court).   Wherefore, this Court should grant this Motion and dismiss the claims against Defendants accordingly.

*Respectfully submitted,*

DEFENDANTS,
Governor Edward Lamont and
Chief State's Attorney Richard
Colangelo,

WILLIAM TONG
ATTORNEY GENERAL

Dated February 9, 2022
New Haven, Connecticut

BY:  /s/  Dennis M. Carnelli
Dennis M. Carnelli (ct30050)
Assistant Attorney General
State of Connecticut
Office of the Attorney General
110 Sherman Street
Hartford, CT 06105
dennis.carnelli@ct.gov
Tel: (860) 808-5450
Fax: (860) 808-5591

## CERTIFICATION

I hereby certify that on February 9, 2022 a copy of the foregoing was filed electronically and served by mail on anyone unable to accept electronic filing. Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing. Parties may access this filing through the Court's CM/ECF system.

 /s/  Dennis M. Carnelli
Dennis M. Carnelli (ct30050)