# SUBSTITUTE EXHIBIT 1

## Defendants' Motion to Dismiss, 2/9/22, ECF No. 20

Federal Records Center Copy of Memorandum of Decision in *NSWWP & Sherwood v. S.N.E.T., Co., et al.*, Civil No. H-74-230 (D. Conn. Sept. 30, 1975) (per curiam) (three-judge court)

MICROFILM
OCT 6 1975
HARTFORD

FILED
OCT 1 11 59 AM '75
U. S. DISTRICT COURT
NEW HAVEN, CONN.

UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

NATIONAL SOCIALIST WHITE PEOPLE'S PARTY & FRED SHERWOOD

-vs-

SOUTHERN NEW ENGLAND TELEPHONE COMPANY, CONNECTICUT PUBLIC UTILITIES COMMISSION, JOSEPH T. GORMLEY, JOSEPH WALSH, JOHN S. WARD, & FRED NEUSNER

Civil No. H74-230

BEFORE: TIMBERS, Circuit Judge, CLARIE and ZAMPANO, District Judges.

MEMORANDUM OF DECISION

PER CURIAM.

This civil rights action was commenced pursuant to 42 U.S.C. §§ 1983, 1985 and 1987; the jurisdiction of the Court was invoked under 28 U.S.C. § 1343(1) and (3). The Court is asked to enjoin the Southern New England Telephone Company (SNETCo) from refusing phone service to the plaintiffs, who ask for the convening of a three-judge court to pass upon and declare Conn. Gen. Stat. § 53-37 to be unconstitutional[1], to enjoin its enforcement and award the plaintiffs damages, costs of court and attorney's fees. The Court finds that the use of the telephone as described cannot be construed to be the type of advertisement prohibited under § 53-37, and accordingly denies relief and dismisses the action.

Facts

The basic facts of the case are not in dispute. The first of three counts in the complaint alleges that at the time in question plaintiff Sherwood, a unit leader of the National Socialist White People's Party in Bridgeport, contracted on its behalf for telephone service with SNETCo. The purpose of the phone service was to disseminate certain taped political propaganda messages setting forth the party's views on current events and public issues. The content of these pre-recorded cassette messages were prepared verbatim from White Power, the newsletter published by the George Lincoln Rockwell Party, Inc. These tapes were usually replaced weekly. The teaching content, which can be described as scurrilous at best, included such subjects as the need for the preservation and advancement of the "Aryan Race"; belief in the impossibility and undesirability of "Negro equality"; and that the communications media is dominated by "Jewish influence."[2/] The second count alleges that a conspiracy existed among the defendants for the purpose of depriving the plaintiffs of their constitutional rights, including freedom of the press, freedom of speech and the right to petition for redress of grievance. The plaintiffs claimed that the defendants' action was designed to prevent the plaintiffs from raising constitutional defenses to the termination of their

telephone service or to the criminalization of their conduct in a court of law. The third count alleges that the state's proposed enforcement of Conn. Gen. Stat. § 53-37 infringes upon plaintiffs' rights to freedom of speech and of the press, as guaranteed under the first and fourteenth amendments to the United States Constitution.

At the time of the incident complained of, Sherwood had contracted with SNETCo for a business telephone service on an auxiliary residence line equipped with automatic announcement equipment. The number was unlisted in the directory, but it was available through the information operator. The number was published in the Party's newspaper, various Party leaflets and "by word of mouth."

Upon receiving a complaint concerning these recordings, the Bridgeport Superintendent of Police, Walsh, investigated the matter and concluded that the message content violated Conn. Gen. Stat. § 53-37. He did not apply for an arrest warrant, but advised SNETCo by letter that the plaintiffs' telephone was being used in violation of the law and requested that service be discontinued. The Company thereupon advised the plaintiffs in writing of defendant Walsh's instructions, and explained that as a public utility it was obligated to follow "Southern New England Telephone Company Tariff, Part I, Sheet 4(A), Number 24,"[3/] which required that phone services

furnished by it should not be used for any unlawful purpose. The letter explained that upon receiving such a notification, it was required to terminate service, and it gave the plaintiffs notice that at the end of 14 days, it would do so. Absent any intervening action by the plaintiffs, the Company accordingly terminated the service on June 17, 1974. The present action was filed on July 25, 1974 by counsel acting in the plaintiffs' behalf and retained by the Connecticut Civil Liberties Union.

At the conclusion of the preliminary hearing on August 23, 1974, the matter was continued to August 28, 1974, at which time the parties entered into a stipulation that involved the re-installation of plaintiff Sherwood's telephone service. The first and second counts of the complaint were withdrawn, and plaintiffs agreed to proceed with their challenge to the constitutionality of § 53-37 against the defendant Walsh only. Plaintiffs' claims for damages were withdrawn, and defendant Walsh agreed not to instigate the prosecution of plaintiffs during pendency of this action, while reserving the right to do so in the event that the Court should find the statute constitutional and enforceable. A three-judge Court was then convened and a hearing had on the constitutional issue on April 18, 1975.

Law

Conn. Gen. Stat. § 53-37 provides:

> "Any person who, by his advertisement, ridicules or holds up to contempt any person or class of persons, on account of the creed, religion, color, denomination, nationality or race of such person or class of persons, shall be fined not more than fifty dollars or imprisoned not more than thirty days or both." (Emphasis added).

The plaintiff Sherwood contends that the statute, both on its face and as applied to him, is an unconstitutional violation of his right to freedom of speech. Any determination of this claim would begin with a consideration of the decision of the United States Supreme Court in Beauharnais v. Illinois, 343 U.S. 250 (1952). In that case a divided court by a 5—4 vote upheld the constitutionality of an Illinois "group libel" statute, similar in many respects to the Connecticut statute being challenged here. As Judge Burger, (now Chief Justice Burger) said in a later case, Anti-Defamation League of B'Nai B'Rith, PAC. S.W.R.O. v. Federal Communications Commission, 403 F.2d 169, 174 fn. 5 (D.C. Cir. 1968), cert. den. March 24, 1969, 89 S.Ct. 1190, it is doubtful Beauharnais now represents the Court's position on the issues raised.

> "In Beauharnias v. People of State of Illinois, 343 U.S. 250, 72 S.Ct. 725, 96 L.Ed. 919 (1952), a divided Supreme Court upheld a conviction under a statute outlawing defamation of a racial or religious group. However,

> far from spawning progeny, Beauharnais has been left more and more barren by subsequent First Amendment decisions, to the point where it is now doubtful that the decision still represents the views of the Court."

See also, Garner v. Louisiana, 368 U.S. 157, 202 (1961), where the Court said:

> "[W]hen a State seeks to subject to criminal sanctions conduct which, except for a demonstrated paramount state interest, would be within the range of freedom of expression as assured by the Fourteenth Amendment, it cannot do so by means of a general and all-inclusive breach of the peace prohibition. It must bring the activity sought to be proscribed within the ambit of a statute or clause 'narrowly drawn to define and punish specific conduct as constituting a clear and present danger to a substantial interest of the State.' Cantwell v. Connecticut, supra, at 311; Thornhill v. Alabama, 310 U.S. 88, 105. And of course that interest must be a legitimate one. A State may not 'suppress free communication of views, religious or other, under the guise of conserving desirable conditions.'" (Footnote omitted).

In the context of the present case, however, it is unnecessary for the Court to reach the question of the continuing vitality of Beauharnais or its applicability to the situation presented here. It is clear to the Court that § 53-37 was never intended to make criminal the type of conduct engaged in by the plaintiffs, nor has it ever been applied in such a fashion. Whatever constitutional infirmities the statute may contain, this case is not at present an appropriate vehicle for their delineation.

The questioned statute prohibits the ridiculing or holding up to contempt of a person or class only when such

acts are accomplished by means of "advertisement." The plaintiffs' provision of an answering device which could be activated in privacy by the voluntary selection of a caller does not constitute an "advertisement" within the meaning of the statute invoked by the defendant Chief of Police. Although § 53-37 has never been authoritatively construed by the Connecticut Supreme Court, and it appears to have been accorded extremely sparing application since its enactment in 1917, one written decision concerning the statute has been brought to the Court's attention. That decision, State of Connecticut v. Jensen, (14th Cir. Ct. Hartford, June 9, 1969, Santaniello, J.), rests on an interpreation consistent with the one adopted by this Court.

In the Jensen case the Court granted the defendant's motion to quash a criminal information on the ground, that the statutory term "advertisement" could not be construed to encompass the defendant's distribution of handbills purported to contain libelous statements. The Court defined "advertisement" as "a public notice, usually paid for, as of things for sale, needs, etc." [which] "relates to a paid article to bring the public's attention to something for the purpose of promoting the sale of the subject matter in question."

The State Circuit Court (now merged with the State Court of Common Pleas) is not an intermediate appellate state

court, and its decisions are not considered to be the final law of the state. However, it does provide the only state court precedent interpreting this statute and its decision is from a court of record.

> "A state is not without law save as its highest court has declared it. There are many rules of decision commonly accepted and acted upon by the bar and inferior courts which are nevertheless laws of the state although the highest court of the state has never passed upon them. In those circumstances a federal court is not free to reject the state rule merely because it has not received the sanction of the highest state court, even though it thinks the rule is unsound in principle or that another is preferable." West v. A.T. & T. Co., 311 U.S. 223, 236-7 (1940).

Also see, Six Companies v. Highway Dist., 311 U.S. 180 (1940); Stoner v. New York Life Ins. Co., 311 U.S. 464 (1940); Cf. King v. Order of Travelers, 333 U.S. 153 (1948).

The listener's deliberate choice of seeking a telephonic political message of this type through a media of private communication was never intended to embrace the term "advertisement," as proscribed in the statute. The Court finds that challenged statute does not apply to the type of conduct engaged in by the plaintiffs.

The plaintiffs' request for an injunction prohibiting the enforcement of § 53-37 against them is denied for the reason that said statute was not intended to reach the type of activity at issue here and would not be so applied by judicial authority in the State of Connecticut.

The foregoing opinion shall constitute the findings of fact and conclusions of law required to be filed by the Court, pursuant to Rule 52(a), Fed. R. Civ. P. SO ORDERED.

Dated at Hartford, Connecticut, this 30th day of September, 1975.

William H. Timbers
United States Circuit Judge

T. Emmet Clarie
Chief United States District Judge

Robert C. Zampano
United States District Judge

MICROFIL
OCT 6 1975
HARTFORD

FOOTNOTES

1/ Senate Bill 153, Chapter 203, approved April 24, 1917.

2/ Plaintiffs' Exhibits 1, 2, 3, and 4.

3/ This Tariff which has been on file with the Connecticut Public Utilities Commission since 1949 provides:

> "Service will not be furnished if any law enforcement agency, acting within its jurisdiction, advises that such service is being used in violation of law or if the Telephone Company receives other evidence that such service is or will be so used."

**CERTIFICATION**

I hereby certify that on March 1, 2022, a copy of the foregoing was filed electronically and served by mail on anyone unable to accept electronic filing. Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing. Parties may access this filing through the Court's CM/ECF system.

/s/ Dennis M. Carnelli
Dennis M. Carnelli (ct30050)