UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| MARIO CERAME : | |
| Plaintiff, pro se : | |
| v. : | |
| Edward "Ned" Lamont, Jr., : | 3:21-cv-01508 (JCH) |
| Governor of the State of Connecticut; and : | |
| Richard J. Colangelo, Jr., | |
| Chief State's Attorney of Connecticut : | |
| Defendants : | |
| In their official capacities only | JULY 18, 2022 |

**RESPONSE TO DEFENDANTS' OBJECTION CONCERNING
ORDER FOR CERTIFIED QUESTION**

The Defendants filed an objection; entry 38; to this Court's order certifying a question to the Connecticut Supreme Court; entry 37. I oppose the objection. First, certification is consonant with Second Circuit and state precedent. Second, certification may preserve scarce judicial resources. Third, the State's argument amplifies my rational fear of arbitrary enforcement and basis for standing. Accordingly, the Court should overrule the objection.

**I. Certification is Consonant with Precedent**

The State does not address statutory or Circuit precedent concerning the scope of discretion for certifying questions. Connecticut's version of the Uniform Certification of Questions of Law Act is General Statutes § 51-199b. Although the statute has been revised over the years[1], the key governing principles have remained the same.

---

[1] The Statute has been rewritten in form a few times over the years, and prior versions from 1996 and 1988 are attached to aid in reviewing relevant precedent.

1

The Second Circuit recently had occasion to reiterate the test for certification in *Glover v. Bausch & Lomb Inc.*, 6 F.4th 229, 244 (2d Cir. 2021), *certified question answered*, 343 Conn. 513 (2022):

> Certification is an exercise of our discretion. In considering whether to certify a question for review, we have "traditionally considered":
>
>> [1] whether a state court decision has ever provided an authoritative answer[;] [2] the extent to which the question implicates the weighing of policy concerns of particular importance[;] and [3] if the Connecticut Supreme Court's answer may be determinative of the appeal.

Like in *Glover*, all three factors counsel in favor of certification here. As with that case, the Supreme Court of Connecticut has not construed this statute. There is one non-reported opinion in *Jensen*, but that seems to have no precedential value, and certainly the opinion isn't authoritative as to how the statute is actually enforced today. Second, the issues here implicate "policy concerns of particular importance" because issues of the First Amendment and prosecutorial discretion are matters of serious public interest. Finally, the Supreme Court's responses *will be determinative*. If I have standing, it isn't a close question as to whether the statute is unconstitutional on its face. The only serious issue in this case is standing.

Another useful case for this Court to consider is *Dorman v. Satti*, 862 F.2d 432, 434–36 (2d Cir. 1988). The Second Circuit denied certification requested by the State in that case. *Id.* 436.

> The United States Supreme Court has encouraged the use of state certification procedures as an alternative to "the more cumbersome and ... problematic abstention doctrine. . . . The purpose of certification is to obtain the benefit of an authoritative construction from the state's highest court before proceeding to the merits of the dispute. This may further the interests of federal/state comity by providing the state court with the opportunity to rule on an issue of state law before being precluded from doing so by a contrary federal court judgment. The state court's interest in

2

> accepting a certified question for review is particularly strong when it has not yet had the opportunity to interpret the pertinent statutory language. . . . Nevertheless, issues of state law are not to be routinely certified to the highest courts of New York or Connecticut simply because a certification procedure is available. The procedure must not be a device for shifting the burdens of this Court to those whose burdens are at least as great. . . .
>
> The test for determining the appropriateness of employing the certification procedure is whether the statute in question is "readily susceptible" to the proffered narrowing construction that would render an otherwise unconstitutional statute constitutional. . . .

*Id.* at 434–35 (citations omitted)(internal quotation marks omitted). Applying these principles to the present case, there are no reported Connecticut cases construing the statute, and no cases that recognize the one case cited by the state. Accordingly, the comity interest here is "particularly strong." *Id.* at 435. Furthermore, the present factual scenario is unusual. Here we have a 1917 statute, originally written to be applied to businesses, being applied solely to individuals. This is not a "routine" case, and the procedure is not a mere device to shift burdens to the state courts. *See id.*

As to the test for appropriateness, the present situation is suitable *according to the State's position on the statute.* The State implicitly argues that the statute is readily susceptible to a construction that could save it. Accordingly, by the state's position, as the state has argued, certification is proper.[2]

---

[2]Although I favor certification, I disclose in candor to the tribunal some authority that certification may not be appropriate. The problem is how this statute is similar to that in *Dorman*. Because both this statute and the statute in *Dorman* are incapable of a lawful construction, there is a non-frivolous argument against certification:

> [T]he statute in this case is so imprecise and indefinite that it is subject to any number of interpretations. The terms "interfere," "harass," and "acts in preparation" do not admit of distinct limiting constructions. They can mean

3

Standing in this case is not a bar to certification here either.  The issue of standing in the context of a certified question was discussed by the Connecticut Supreme Court in *Ramos v. Town of Vernon*, 254 Conn. 799, 810–11, 761 A.2d 705 (2000).  Like the plaintiff in that case, I allege that I have engaged in, and continue to

---

anything. For this court to ask the Connecticut Supreme Court to consider construing the statute to apply only to "core criminal conduct," as defendants would have it, would be tantamount to asking the Connecticut court "if it would care in effect to rewrite [the] statute."

*Id.* at 436.

The statute here has the same kind of flaw.  The phrase "ridicules or holds up to contempt" in § 53-37 is similarly without a discernable core.  "Ridicule" according to the Merriam-Webster dictionary means "to make fun of."  Merriam-Webster Online Dictionary, ridicule (accessed July 18, 2022) available at https://www.merriam-webster.com/dictionary/ridicule. There is no objective standard to "making fun of" someone.  The conduct depends on the perceptions of others, and such perceptions vary widely among reasonably minded people. Like the terms in *Dorman*, what is considered "ridicule" by some would not be considered ridicule by others.

"Contempt" is much the same.  According to the Merriam-Webster dictionary, "contempt" means a lack of respect or reverence, or the act of despising. Merriam-Webster Online Dictionary, contempt (accessed July 18, 2022) available at https://www.merriam-webster.com/dictionary/contempt.  Again, the measure of the conduct depends on the perceptions of others, or matters of personal taste.  Like with the terms "interfere" and "harass," conduct that is considered a "lack of respect or reverence" by some would not be considered disrespect or irreverent conduct by others, and the act of "despising" is totally nonspecific.  The language is like the term "offensive or disorderly conduct" in this way—what may be an act of "despising" to one person may not be to another.

If the statute were somehow limited to fighting words, then the statute would run afoul of *R.A.V. v. St. Paul*, 505 U.S. 377, 112 S. Ct. 2538 (1992). *C.f. id.* at 389 ("a State may not prohibit only that commercial advertising that depicts men in a demeaning fashion").

And so there is no construction that can save the statute.  I nonetheless support certification because on balance, I recognize the centrality of standing to the present case. If the Defendants' objection disinclines the Court to certify, however, the reason for deciding not to certify should be that, like the statute in *Dorman*, the statute here is incapable of any lawful construction.

4

engage in, conduct that is unlawful under § 53-37 as it is presently enforced. Based on present practices in enforcement—not theoretical construction proffered by the State, but actual enforcement practices—there is a genuine likelihood of criminal liability for my speech.

Reviewing the precedence in *Glover*, *Dorman*, and *Ramos*, certification is proper in this case.

## II. <u>Certification May Preserve Scarce Judicial Resources</u>

Certification is appropriate here because it is the most efficient course. As pointed out in the Objection to the Motion to Dismiss, construction of the statute is **not** crystal clear over time. *Jensen* is not a reported case, and its existence is limited to a citation in another case. In light of the lack of definitive authority in the more-than-a-century long life of the statute, the Court is right to cut to the chase and certify a question to the Supreme Court on the construction of the statute. This may eliminate extensive briefing and scraping-the-barrel kind of research for everyone.

Further, certification may likely to obviate the need for an evidentiary hearing on standing. I am entitled to an evidentiary hearing, and specifically, if necessary, I have the right to call the CSA as a witness and ask him what he understands the scope of his authority to be. The certified question has a substantial likelihood of avoiding that as necessary.

## III. <u>The State's Argument Amplifies My Fear of Arbitrary Enforcement</u>

Let's say for the moment that the State's argument here is genuine:

> Here, the phrase "by his advertisement" is plain and unambiguous. As the Court determined in *Sherwood*, adopting a Connecticut trial court's interpretation of "advertisement," means "a public notice, usually paid for, as of things for sale, needs, etc. which relates to a paid article to bring the

5

public's attention to something for the purpose of promoting the sale of the subject matter in question."

**If what the State says is true, every recorded enforcement of § 53-37 has been patently illegal.**  If what the State says is true, the State is commonly enforcing the law with freewheeling, standardless discretion.

The statute has been enforced at least dozens of times over the past 80 years.  Every enforcement action I have found, from *Cantewell* to current, has been against individual speech.  I have found no evidence of any enforcement actions concerning a business, and neither has the only legal scholar to address the statute.  See Objection to Motion to Dismiss, entry 28, at 12n.3 and accompanying text.  There is a gap between what the State **claims** the law is, and what the State actually **does**.

If the State's claim here in this objection is taken as-is, the governmental abuse of power through the statue is extensive, historical and enduring.  The State's argument does nothing to diminish my rational fear of arbitrary enforcement.  In light of such sweeping illegality—as made plain in the State's own position—my fear of arbitrary enforcement is reasonable.

The State will argue before *this Court* one construction of the statute, but I have observed the State, prosecutors, police, and judges, enforce a different construction in State court.  The State should not be permitted to continue to play the parlor game avoiding clearly established law for qualified immunity purposes and preserving an unfortunately unreasonable dimension of prosecutorial discretion. The State's argument here is meritless.

**Conclusion**

      The Court should overrule the objection.

JULY 18, 2022	Respectfully submitted,

                                            THE PLAINTIFF, pro se

*/s/ Mario Cerame ct30125*
Mario Cerame, pro se

Brignole, Bush & Lewis LLC
73 Wadsworth Street
Hartford, Connecticut 06106
T: 860.527.9973
F: 860.527.5929
E: mario@brignole.com

**CERTIFICATION**

I hereby certify that a copy of the foregoing has been or shall immediately be filed electronically and served by mail on anyone unable to accept electronic filing. Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing. Parties may access this filing through the Court's CM/ECF system.

                                              */s/ Mario Cerame ct30125*
                                              Mario Cerame, pro se