UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| MARIO CERAME, | : | |
|     Plaintiff, | : | CIVIL CASE NO. |
| | : | 3:21cv1508 (JCH) |
| v. | : | |
| | : | |
| NED LAMONT, JR., | : | |
| ET AL., | : | JULY 20, 2022 |
|     Defendants. | : | |

**ORDER CERTIFYING QUESTION RE: DEFENDANTS' MOTION TO DISMISS (DOC. NO. 20) TO THE SUPREME COURT OF CONNECTICUT**

**I.     INTRODUCTION**

This case involves a challenge to section 53-37 of the Connecticut General Statues ("Section 53-37"), which criminalizes certain discriminatory statements. That section provides:

> Any person who, by his advertisement, ridicules or holds up to contempt any person or class of persons, on account of the creed, religion, color, denomination, nationality or race of such person or class of persons, shall be guilty of a class D misdemeanor.

Conn. Gen. Stat. § 53-37. Plaintiff Mario Cerame ("Cerame"), a Connecticut attorney, brings this pre-enforcement action pro se against defendants Connecticut Governor Ned Lamont ("the Governor") and Connecticut Chief State's Attorney Patrick J. Griffin ("the CSA"),[1] alleging that Section 53-37 violates his right to free speech under the First and Fourteenth Amendments of the United States Constitution.

---

[1] When Cerame filed his Complaint on November 10, 2021, Richard Colangelo was Connecticut's CSA. However, the court takes judicial notice that, on March 31, 2022, Colangelo retired and, on May 12, 2022, Patrick J. Griffin assumed the role. See Office of the Chief State's Attorney, CT.GOV, https://portal.ct.gov/DCJ/About-Us/About-Us-Office-of-the-Chief-States-Attorney (last visited July 20, 2022).

1

The defendants have filed a Motion to Dismiss on the ground that Cerame's claim is barred by a lack of Article III standing.[2]  See Mot. to Dismiss (Doc. No. 20).  As the court discusses in more detail below, see pp. 4-11, infra, Cerame does not face, nor has he ever faced, charges under Section 53-37.  Because the statute has not been enforced against him, to establish that he has suffered an "actual injury" conferring constitutional standing to bring his claim in federal court, Cerame must allege that he faces "a credible threat of prosecution" under Section 53-37.  Susan B. Anthony List v. Driehaus, 573 U.S. 149, 159 (2014).  However, the parties disagree as to whether Cerame's alleged conduct—engaging in race-, nationality-, or religion-based ridicule among his friends and while working, including, occasionally, in an open forum or on the internet—falls within the scope of Section 53-37.  In particular, the defendants argue that the statute applies only to "advertisement" and excludes the kinds of statements Cerame allegedly makes because he does not make them "by his advertisement."

---

Cerame pursues his claim against the CSA in his official capacity, thus Griffin is automatically substituted for Colangelo.  See Fed. R. Civ. P. 25(d) ("[a]n action does not abate when a public officer who is a party in an official capacity . . . resigns . . . . The officer's successor is automatically substituted as a party.").  The Clerk of the District Court is directed to correct its docket to substitute Attorney Griffin.

[2] An issue also exists with respect to the proper defendants in this case.  Cerame has withdrawn his claim as to the Governor, but he continues to pursue relief as to the Chief State's Attorney ("CSA").  See Opp'n at 1.

The parties disagree as to whether the CSA is a proper party to this case.  See Opp'n at 1; see also Mot. to Dismiss at 9-14.  Even if Cerame has not adequately alleged that the CSA has the requisite "connection" with enforcing 53-37, Cerame has identified in his Opposition a party with such a "connection"—the State's Attorney for Hartford.  See Opp'n at 7; see also Mot. to Dismiss at 10-12 (citing Conn. Gen. Stats. § 51-286a(a) (imposing upon individual state's attorneys for each judicial district the duty of enforcing criminal law)).  Cerame has indicated that, were the court to dismiss this action, he would seek leave to replead, naming the proper party and placing the issue of Cerame's standing back before this court.  Therefore, regardless of how the court resolves the dispute regarding the proper party, the issue of Cerame's standing will remain.  See Opp'n at 7; see also Mot. to Dismiss at 10-12 (identifying a proper party to substitute for the CSA).  Thus, in the interest of judicial economy, the court seeks to certify its question about the scope of Section 53-37, which will be determinative as to Cerame's standing and could result in resolution of this action.

Therefore, they dispute whether Cerame risks prosecution under the statute and, consequently, whether he faces any actual injury imparting Article III standing.

No controlling precedent from the Connecticut Supreme Court or the Connecticut Appellate Court has addressed whether Section 53-37 applies exclusively to "advertisement" and, if so, whether the type of speech in which Cerame engages constitutes the sort of "advertisement" that would fall within the scope of the statute. To resolve this determinative issue, the court certifies to the Connecticut Supreme Court the question of whether Cerame's conduct comes within the scope of Section 53-37.[3]

## II. LEGAL STANDARD

Under Connecticut law, the Connecticut Supreme Court "may answer a question of law certified to it by a court of the United States . . . if the answer may be

---

[3] While the plaintiff agrees that this court should so certify, see Response Opposing Objection to Order to Show Cause (Doc. No. 39), defendants object, arguing the court can resolve the case by relying on their Eleventh Amendment argument. See Objection to Order to Show Cause at 1-2 (Doc. No. 38). As it relates to the Governor, that argument has been addressed. See supra at 2 n. 2. As to the CSA, the court is not yet persuaded that the CSA does not come under the Ex parte Young exception to Eleventh Amendment Immunity for prospective relief for ongoing violations of federal law. See Ex parte Young, 209 U.S. 123, 154 (1908); see also Nat'l Ass'n for Advancement of Colored People v. Merrill (hereinafter "NAACP"), 939 F.3d 470, 475 (2d Cir. 2019).

The defendants argue that the CSA does not fall within the Ex parte Young exception because he lacks the requisite "connection" with enforcing the alleged ongoing constitutional violation—i.e., that the CSA has neither the duty nor the willingness to enforce Section 53-37. See Mot. to Dismiss at 9-14. However, while the Ex parte Young exception does not sweep so broadly as to include executive officials, such as governors who are "in a general sense, charged with the execution of all [a state's] laws", Urso v. Lamont, No. 3:20-CV-00529 (KAD), 2021 WL 5919819, at *5–6 (D. Conn. Dec. 15, 2021) (citation omitted), it does subject to suit officials with a "duty to enforce the statute in question" and a "demonstrated willingness to exercise that duty." Kuck v. Danaher, 822 F. Supp. 2d 109, 151 (D. Conn. 2011) (determining the Commissioner of the Connecticut State Department of Public Safety fell within the Ex parte Young exception because a statute authorized him to engage in the challenged act of revoking a permit). Here, Cerame contends that the CSA is authorized under section 51-277 of the Connecticut General Statutes to enforce Section 53-37, see Cerame Opp'n at 2-7 (Conn. Gen. Stats. § 51-277(d)(1) (granting the CSA power to sign warrants and informations)), and that the CSA's office is effectively willing to exercise its authority to enforce Section 53-37 as it is "concerned with strategic and long term development" of the provision. See Cerame Aff. at ¶ 38; see also supra at 2 n. 2. Therefore, the court is not persuaded by the defendants' argument that this case should be resolved on the ground of the Eleventh Amendment. The court thus certifies its question regarding the scope of Section 53-37 to the Connecticut Supreme Court over the defendants' objection.

3

determinative of an issue in pending litigation in the certifying court and if there is no controlling appellate decision, constitutional provision or statute of this state." Conn. Gen. Stat. § 51-199b(d).

To determine whether to certify a question to the Connecticut Supreme Court, a federal court must consider, among other factors: "(1) the absence of authoritative state court decisions; (2) the importance of the issue to the state; and (3) the capacity of certification to resolve the litigation." Bifolck v. Philip Morris, Inc., 2014 WL 585325, at *2 (D. Conn. Feb. 14, 2014) (quoting O'Mara v. Town of Wappinger, 485 F.3d 693, 698 (2d Cir. 2007)).  Certification allows state courts "to define state law", Gutierrez v. Smith, 702 F.3d 103, 116 (2d Cir. 2012), rightfully affording them the "first opportunity to decide significant issues of state law through the certification process . . . ." Munn v. Hotchkiss Sch., 795 F.3d 324, 334 (2d Cir. 2015), certified question answered, 326 Conn. 540, 165 A.3d 1167 (2017).  Therefore, certification is especially proper where the issues "implicate[ ] the weighing of policy concerns", because "principles of comity and federalism strongly support certification." Id.

Under section 51-199b of the Connecticut General Statutes, a certification order must contain:

(1) The question of law to be answered;

(2) The facts relevant to the question, showing fully the nature of the controversy out of which the question arose;

(3) That the receiving court may reformulate the question; and

(4) The names and addresses of counsel of record and unrepresented parties.

Conn. Gen. Stat. § 51-199b(f).  To facilitate the work of the Connecticut Supreme Court, and in compliance with section 51-199b of the Connecticut General Statutes, the court

sets forth below the relevant facts and the contested issues of law before stating the question to be answered.

## III.   BACKGROUND

Cerame, a free speech advocate, alleges that Section 53-37 chills his speech. Compl. at ¶¶ 12, 20.  He claims that he has a history of speaking in a manner that he believes falls within the scope of Section 53-37.  For instance, while Cerame identifies as a "person with Italian ancestry or nationality" and an "American", he sometimes ridicules himself or others "on the basis of Italian heritage or on the basis of being an American national."  Id. at ¶ 13.  He also ridicules others on the basis of their race, religion, creed, color, nationality or denomination "to express comradery" with his "closest and dearest friends", occasionally in an open forum or on the internet.  Id. at ¶ 14.  He "speaks critically" of Scientology and other religious practices he considers "harmful to society", ridiculing them to "make a point."  Id. at ¶ 15.

In his work as a free speech advocate, he alleges, he sometimes uses "racial slurs" or "impolite terms for individuals of certain religious denominations" which, he believes, could be construed as "derogatory or demeaning."  Id. at ¶ 17.  He watches and republishes material by comedians who ridicule others on the basis of race, religion, creed, color, denomination, or nationality.  Id. at ¶ 18.

In an Affidavit submitted in response to the defendants' Motion to Dismiss, Cerame explains that his concern about Section 53-37 heightened when he attended a November 2020 webinar.[4]  See Cerame Aff. at ¶ 16 (Doc. No. 28-1).  The event, hosted

---

[4] The claims stated by Cerame in his Affidavit are not included in his Complaint.  When, as here, a court is considering whether to dismiss a case for lack of subject matter jurisdiction, however, a court may consider affidavits.  All. for Envtl. Renewal, Inc. v. Pyramid Crossgates Co., 436 F.3d 82, 88 (2d Cir. 2006).  Further, if the court were to dismiss the Complaint for a lack of specificity in pleading, Cerame

5

by the Connecticut Bar Association, was entitled "Free Speech or Hate Speech? A Conversation Regarding State v. Liebenguth."[5]  Id.  At the webinar, Cerame had a conversation about Section 53-37 with a former Assistant State's Attorney which "affected how [he] underst[ood] enforcement" of the statute.  Id. at ¶¶ 16-19.  Cerame began to feel that he "could be subject to arbitrary enforcement for speech" in which he ordinarily engages.  Id. at ¶ 21.

Subsequently, on March 11, 2022, Cerame "observed a proceeding" in which the defendant faced prosecution under 53-37 for "using ugly words in public", although the defendant's "speech had nothing to do with an advertisement."  Id. at ¶ 24.  After these encounters, Cerame alleges he has become "afraid that some of [his] speech would trigger" enforcement of the statute, and he has therefore "changed [his] speech because of the statute and because of what [he has] learned about the statute." Id. at ¶¶ 29-30.  While he does "engage in some speech that [he] think[s] could cause [him] to be prosecuted . . . , there is also a substantial amount of speech that [he] do[es] not engage [in] because of what [he] know[s] about enforcement of § 53-37 . . . ."  Id. at ¶ 34.

In his Complaint, Cerame alleges that he and "many citizens" of Connecticut violate Section 53-37 "on a weekly, if not daily, basis", and that his fear of "enforcement of the statute" "chills" his speech.  Id. at 19-20.  He therefore requests declaratory and

---

would be permitted to replead and would add the allegations in his Affidavit to the Complaint.  Thus, in the interest of judicial economy and to illustrate the full nature of the controversy, the court includes Cerame's assertions from his Affidavit here to provide a more complete background for the Connecticut Supreme Court.

[5] In Liebenguth, the Connecticut Supreme Court upheld the Superior Court's breach-of-the-peace convictions of a white man who yelled racial slurs at a black police officer.  State v. Liebenguth, 336 Conn. 685, 687 (2020), cert. denied, 141 S. Ct. 1394 (2021).  The state's Supreme Court determined that the defendant's profanities were fighting words, exempt from First Amendment protections.  Id. at 689.

injunctive relief to redress the deprivation of his right to free speech under the First and Fourteenth Amendments of the United States Constitution.  Id. at 29-30.

## IV. DISCUSSION

### A. First Amendment Pre-Enforcement Standing

The defendants argue that Cerame lacks Article III standing to challenge Section 53-37 because he has not alleged that he engages in speech proscribed by the statute and, even if he does, he fails to allege that he faces a credible threat of prosecution under the statute.  See Mot. to Dismiss at 14-25.  Cerame, by contrast, contends that his speech is of the type targeted by Section 53-37 and, thus, he confronts a real threat of prosecution.  See Opp'n at 9-18.

The requirement that a party have Article III standing to assert its claims "is a prerequisite to [a] [c]ourt's subject matter jurisdiction." Baker v. Bzydra, No. 3:18-CV-01792, 2019 WL 6619348, at *1 (D. Conn. Dec. 5, 2019).  One indispensable element of the standing analysis requires a plaintiff to demonstrate an injury-in-fact, or "a concrete and particularized harm to a legally protected interest." W.R. Huff Asset Management Co., LLC v. Deloitte & Touche LLP, 549 F.3d 100, 106 (2d Cir. 2008) (internal quotations and citations omitted).  When a party asserts a pre-enforcement First Amendment claim, though, courts in this Circuit apply "somewhat relaxed standing . . . rules." Nat'l Org. for Marriage, Inc. v. Walsh, 714 F.3d 682, 690 (2d Cir. 2013).  Two overlapping types of justiciable injuries may arise in the context of pre-enforcement First Amendment claims: first, when the plaintiff engages in the prohibited speech he may face a fear of prosecution, and second, when the plaintiff refrains from the prohibited speech, he may confront self-censoring and the chilling of his speech.

7

To demonstrate the first type of injury—fear of prosecution for engaging in speech—a plaintiff must allege "an intention to engage in a course of conduct arguably affected with a constitutional interest, but proscribed by a statute [under which] there exists a credible threat of prosecution . . . ." Susan B. Anthony List v. Driehaus, 573 U.S. 149, 159 (2014); see also Stagg, P.C. v. U.S. Dep't of State, 983 F.3d 589, 601–02 (2d Cir. 2020) (same).  In other words, the plaintiff must allege an "actual and well-founded fear that the law will be enforced against them." Virginia v. Am. Booksellers Ass'n, Inc., 484 U.S. 383, 393 (1988); see also Adam v. Barr, 792 F. App'x 20, 21–22 (2d Cir. 2019).

To demonstrate the second, related type of injury—chilling of speech—a plaintiff must allege that the statute in question has driven him to self-censorship.  A plaintiff must point to something more than an abstract, subjective fear that his rights are chilled in order to establish a case or controversy.  See Laird v. Tatum, 408 U.S. 1, 13–14 (1972); see also Whole Woman's Health v. Jackson, 142 S. Ct. 522, 538 (2021) ("the 'chilling effect' associated with a potentially unconstitutional law being 'on the books' is insufficient to 'justify federal intervention' in a pre-enforcement suit").  But a real and imminent fear of such chilling is enough.  Nat'l Org. for Marriage, Inc. v. Walsh, 714 F.3d 682, 689 (2d Cir. 2013).  Thus, to establish standing due to the chilling effect of a statute, a plaintiff must offer allegations to "substantiate his claim that the challenged [statute] has deterred him from engaging in protected activity." Latino Officers Ass'n v. Safir, 170 F.3d 167, 170 (2d Cir. 1999) (citing Bordell v. General Elec. Co., 922 F.2d 1057, 1060–61 (2d Cir.1991)).

Ultimately, both interrelated injuries arising in pre-enforcement First Amendment cases—fear of enforcement and chilling—depend on one common issue: whether a "credible threat of prosecution" imperils the plaintiff.  See Susan B. Anthony List v. Driehaus, 573 U.S. 149, 159 (2014).  The determinative issue before this court, therefore, is whether Cerame faces a credible threat of prosecution on the basis of his alleged racial and religious ridicule, such that he holds a "real and imminent fear" sufficient to chill his speech in the manner he has alleged.  If so, he has standing to bring his claim.  If not, he lacks standing, and this court lacks jurisdiction over his case.

      B.      Scope of Connecticut General Statutes § 53-37

Whether Cerame faces a credible threat of prosecution for his race-, nationality-, and religion-based mockery depends, in part, on whether Cerame's actions are of the type regulated by Section 53-37.  Here, the parties disagree, and Connecticut law is not clearly established.

The defendants argue that Cerame has failed to establish that the conduct described in his Complaint is proscribed by Section 53-37, because, the defendants contend, "the statute prohibits the ridiculing or holding up to contempt of a person or class only when such acts are accomplished by means of 'advertisement.'" Mot. to Dismiss at 19 (citing Nat'l Socialist White People's Party & Fred Sherwood v. Southern New England Telephone Co., et al., Civil No. H-74-230 at 6-8 (D. Conn. Sept 30, 1975) (per curiam) (three-judge court) (Doc. No. 23)) (emphasis added in Motion to Dismiss). The defendants rely on Sherwood, a 1975 District of Connecticut case which adopted a Connecticut trial court's interpretation of the term "advertisement" in Section 53-37, determining that "advertisement" refers to "public notice, usually paid for, as of things for sale, needs, etc. which relates to a paid article to bring the public's attention to

9

something for the purpose of promoting the sale of the subject matter in question." Sherwood, Civil No. H-74-230 at 6-8 (citing State of Connecticut v. Jensen (14th Cir. Ct. Hartford, June 9, 1969)).[6]  In light of this definition of "advertisement", the defendants contend that none of Cerame's alleged activities—which do not involve public notice, things for sale, or paid promotion—are proscribed by Section 53-37.  Because the statute "does not proscribe [Cerame's] conduct made in the absence of an 'advertisement'", the defendants argue, Cerame lacks the requisite injury-in-fact to establish Article III standing.  Mot. to Dismiss at 20.

Cerame, on the other hand, contends that he faces a "real and imminent threat" because of his speech, and that he sometimes declines to engage in protected speech due to the chilling effect of his fear of prosecution.  See Opp'n at 8.  To demonstrate that Section 53-37 is enforced against individuals who are not engaged in "advertising", he relies on two cases, neither of which are controlling appellate authority.  First, in State v. N.D. Cantwell, et al. (New Haven Ct. of Common Pleas Sept. 8, 1938), see Opp'n at Ex. B (Doc. No. 28-2), a Connecticut trial court considered charges against the defendants under the then-existing version of Section 53-37 for distributing books and pamphlets critical of religions.  Second, Cerame references Jensen, the Connecticut Circuit Court case cited in Sherwood, the non-controlling District of Connecticut case upon which the defendants rely.  The Jensen Ruling, Cerame argues, is an example of the "statute being enforced vis-à-vis non-advertising speech."  See Opp'n at 10.  While

---

[6] State of Connecticut v. Jensen is an unreported decision from the Connecticut Circuit Court, which acted as a trial court of limited jurisdiction from 1960 to 1974.  See Vendrella v. Astriab Fam. Ltd. P'ship, 311 Conn. 301, 320 n. 17 (2014) (citing State of Connecticut Judicial Branch, "History of the Courts," available at http://jud.ct.gov/ystday/history.html (last visited July 11, 2022)).

neither party located a copy of <u>Jensen</u>, the case is cited in <u>Sherwood</u> for the proposition that the ridicule statute applies only to advertising.  <u>See</u> <u>Sherwood</u>, Civil No. H-74-230 at 6-8 (citing <u>State of Connecticut v. Jensen</u> (14th Cir. Ct. Hartford, June 9, 1969)).  However, Cerame contends that the fact that the defendant was prosecuted for the "distribution of handbills purported to contain libelous statements" indicates that speech other than advertisement invokes enforcement of Section 53-37.  <u>See</u> <u>id.</u>

Cerame also points to other non-binding sources, including two Office of Legislative Research reports which mention Section 53-37 but do not refer to an "advertising" requirement.  <u>See</u> Opp'n at 11 (citing <u>Connecticut Hate Crime Laws</u>, Connecticut Office of Legislative Research (Apr. 15, 2008), https://www.cga.ct.gov/ 2008/rpt/2008-R-0276.htm and <u>Hate Speech on the Internet</u>, Connecticut Office of Legislative Research (Sept. 10, 1999), https://www.cga.ct.gov/ PS99/rpt/olr/htm/99-R-0945.htm).  Cerame further references several blog posts published by Professor Eugene Volokh about enforcement of the statute; the East Haven Police Department manual's guidance regarding the statute; and news articles about the statute's use to quell speech that does not appear, on its face, to constitute advertisement.  <u>Id.</u>  Lastly, he points to two police reports for individuals charged under Section 53-37 in connection with non-advertising speech. [7]  <u>See</u> Police Reports (Doc. No. 28-3).  While

---

[7] The first individual, "C.M.", was arrested for harassing a home healthcare worker.  "C.M." was processed and charged with Disorderly Conduct under 531-182 and Ridicule Based on Race under 53-37.

The second individual, "J.P.", was arrested in August 2021, for semi-coherently yelling offensive remarks at people on the street.  The police report states that he was later processed under Section 53-57 for Ridicule on account of creed, religion, color, denomination, nationality or race, and under Section 53a-181 for Breach of Peace in the Second Degree.  The court takes judicial notice that on March 11, 2022, "J.P." pled guilty to violating Section 53-37, and was sentenced to an unconditional discharge.  <u>See</u> State of Connecticut Judicial Branch Criminal/Motor Vehicle Conviction Case Detail, H12M-CR21-0286486-S, https://www.jud2.ct.gov/crdockets/ CaseDetailDisp.aspx?source=Pending&Key=291467d1-

Cerame argues that these examples indicate that the statute is being enforced against individuals engaging in non-advertising speech, none of these sources constitute binding Connecticut authority.

The court is left with little guidance as to the proper interpretation of Section 53-37.  While the text of the statute itself appears to implicate only speech that occurs in the context of advertisement, Connecticut's higher courts have yet to define "advertisement" for the purposes of the statute.  The resulting uncertainty is exacerbated by Cerame's allegations that the provision is largely enforced against individuals who are not clearly engaging in advertising activities.  Given the parties' lack of agreement, the dearth of Connecticut precedent, and a healthy respect for the principles of comity and federalism,[8] this court has determined the issue of the proper interpretation of Section 53-37 should be certified to the Connecticut Supreme Court.

## V.    QUESTION FOR CERTIFICATION

Because "the answer[s] may be determinative" as to the jurisdictional issue of the plaintiff's standing before this court and because existing Connecticut Law contains "no

---

d5cb-4df1-8dca-710448fe2ccd (last visited June 9, 2022).  On the same date, he also pled guilty to (1) Threatening in the Second Degree under 53a-62, for which he was sentenced to 364 days jail, execution suspended, and probation of 18 months, and (2) Breach of the Peace in the Second Degree under 531-181, for which he was sentenced to an unconditional discharge. See State of Connecticut Judicial Branch Criminal/Motor Vehicle Conviction Case Detail, H12M-CR19-0282186-S, https://www.jud2.ct.gov/crdockets/CaseDetailDisp.aspx?source=Pending&Key=59fd256c-cc94-4533-b871-0ffc6842241f (last visited June 9, 2022); State of Connecticut Judicial Branch Criminal/Motor Vehicle Conviction Case Detail, H12M-CR21-0285282-S, https://www.jud2.ct.gov/crdockets/CaseDetailDisp.aspx?source=Pending&Key=2f4b6d78-84c6-4d70-aff2-75329f458d28 (last visited June 9, 2022).

[8] The court also takes judicial notice that the Connecticut legislature introduced during its 2020 session a bill to repeal Section 53-37.  See An Act Repealing The Prohibition Against Ridicule Of Another Person On Account Of Creed, Religion, Color, Denomination, Nationality Or Race, S.B. 73 (2020), https://www.cga.ct.gov/asp/cgabillstatus/cgabillstatus.asp?selBillType=Bill&bill_num=SB00073&which_year=2020.  A public hearing was held on the Bill on February 13, 2020, but ultimately, the measure died in committee.  Id.  Despite the Bill's failure, the recent introduction of legislation to repeal Section 53-37 signals an ongoing state-level policy debate over the statute and reinforces the court's determination that certification to the Connecticut Supreme Court is warranted.

controlling appellate decision, constitutional provision or statute", see Conn. Gen. Stat. § 51-199b(d), the court certifies the following question to the Supreme Court of Connecticut:

> Does the speech alleged in Cerame's Complaint (paragraphs 13-18) come within the scope of the phrase "by his advertisement" as that phrase is used in section 53-37 of the Connecticut General Statutes?

As provided in Section 51-199b(f)(3), the Connecticut Supreme Court may reformulate or augment this question as it sees fit.

### VI.   NAMES AND ADDRESSES

As required under Section 51-199b(f)(4), the names and addresses of counsel of record and the unrepresented plaintiff are as follows:

>Mario K. Cerame
>Brignole, Bush & Lewis
>73 Wadsworth St.
>Hartford, CT 06106
>860-527-9973
>Fax: 860-527-5929
>Email: mario@brignole.com
>
>Janelle Medeiros
>Office of the Attorney General
>Public Safety
>110 Sherman Street
>Hartford, CT 06105
>860-808-5450
>Fax: 860-808-5591
>Email: janelle.medeiros@ct.gov

>Lisamaria T. Proscino
>Office of the Attorney General
>110 Sherman Street
>Hartford, CT 06105
>860-808-5432
>Email: lisamaria.proscino@ct.gov

**VII.   CONCLUSION**

For the foregoing reasons, the court certifies the following question to the Connecticut Supreme Court, subject to that Court's reformulation:

>Does the speech alleged in Cerame's Complaint (paragraphs 13-18) come within the scope of the phrase "by his advertisement" as that phrase is used in section 53-37 of the Connecticut General Statutes?

The Clerk is ordered to stay this case pending the response of the Connecticut Supreme Court.

**SO ORDERED.**

Dated at New Haven, Connecticut this 20th day of July 2022.

>　　　　　　　　　　　　　　/s/ Janet C. Hall
>　　　　　　　　　　　　　　Janet C. Hall
>　　　　　　　　　　　　　　United States District Judge